ALFREDO NAZARIO, ETC., Petitioner, v. SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, J. RIVERA BARRERAS, JUDGE, Respondent; HOTEL AMERICANA OF PUERTO RICO, INC., Intervener.

No. O-69-105.    Decided March 17, 1970.

*Manuel Janer Mendía, Ángel Alfonso Colón, I. Felipe Martir Soto, Rafael A. Marzán Robles, Mario Morales Reyes, Ruy N. Delgado Zayas,* and *Fernando Román Concepción* for petitioner. *González, Jr., González Oliver & Morán* and *José M. Biaggi Junquera* for intervener.

MR. JUSTICE RIGAU delivered the opinion of the Court.

On December 21, 1966, the Secretary of Labor of Puerto Rico appearing "in representation and on behalf" of several employees of Hotel Americana in this city filed, in the Superior Court, San Juan Part, a complaint concerning a claim for wages. The claim covers the period from the year 1956 to the year 1965.[1]

Respondent having filed a motion to dismiss, the Superior Court, by a well-grounded order of June 27, 1968, granted the motion by reason that the collective bargaining agreement which bounded the parties provided for the settlement of all the disputes which might arise out of said agreement

---

[1] Neither the complaint nor its Exhibit A describe said period in more detail. In spite of the long period covered by the same, because its items are small, they only amount to $2,688.89.

through arbitration. The court denied the complaint without prejudice that the petitioners would resort to the arbitration proceeding established in the collective bargaining agreement.

The Secretary of Labor filed a motion for reconsideration and by its order of March 13, 1969 the trial court set aside its previous order by which it had dismissed the complaint and granted the motion for reconsideration in part and denied it in part. It granted it as to the period from 1956 to January 25, 1963, claim which it determined need not be submitted to arbitration, and denied it as to the period subsequent to said date, claim which it determined had to be submitted to arbitration. The court relied on the decision of this Court in *Pérez* v. *Water Resources Authority*, 87 P.R.R. 110 (1963), in *Withington* v. *R.C.A. Communications, Inc.*, R-64-148, judgment of March 18, 1966, and on the text of the collective bargaining agreement. The court denied respondent's second motion for reconsideration requesting that the court order that the claim as a whole should be submitted to arbitration.

Petitioner alleges that the trial court committed the following errors:

1. That it split the case submitting the claim to two forums.

2. That it failed to consider the summary nature of this type of claim and the plaintiff status of the Secretary of Labor.

3. That it failed to consider the public policy embodied in the Minimum Wage Act, in Act No. 2 of October 17, 1961 (32 L.P.R.A. § 3118 *et seq.*), in the mandatory decrees, and in the capacity of the Secretary in these claims.

4. That it erred in ordering part of the case to be settled by arbitration.

The errors assigned were not committed. Since the error committed concerning the Secretary is basically one of ap-

proach, we shall make a recital of the situation and then we shall set forth specific conclusions on the case and on the errors assigned.

■ In *Pérez, supra,* we decided that the controversies concerning wages may be submitted to the procedure of arbitration, or excluded therefrom as agreed upon in the collective bargaining agreement. In said case we decided that what was established therein would be prospectively applied only "In the belief that the arbitration provisions of the agreements already entered into were not drawn up and approved by the parties, having in mind the ruling [therein] announced." The date of our decision in *Pérez* is January 25, 1963. The foregoing accounts for the fact that in the case at bar the trial court considered said date as the borderline date in its aforementioned order of March 13, 1969.

In *Withington* v. *R.C.A. Communications, supra,* in view of a situation quite similar to that of the case at bar, we stated that the claim covering periods prior to January 25, 1963 need not be submitted to arbitration, but that the claim arising out of an agreement subsequent to said date, and which was covered by an arbitration clause, would be submitted to arbitration.

■ We have already established that arbitration, as well as the grievance committees and the courts, are different mechanisms or forums proper for the elucidation of certain labor-management controversies and that said controversies may involve wages, if so agreed upon, but once they are elucidated in the forum established in the agreement, the laws shall determine the manner in which said salaries shall be paid. Therefore, the employees' right to recover unpaid wages at the legal rate is not lost for having agreed to resort to arbitration. The provisions of law concerning working hours and wages embody the public policy of the country as to those matters, are part of the labor contract, and the arbitration

awards cannot violate them. *Beauchamp* v. *Dorado Beach Hotel, ante,* p. 622, decided February 12, 1970; *Martínez* v. *Commonwealth Oil Refining Co.,* 92 P.R.R. 673 (1965); *Encarnación* v. *Jordán,* 78 P.R.R. 481 (1955).

The Secretary considers that to decide in the sense the Superior Court did, upholding the strength and validity of collective bargaining—the agreement is the result thereof and arbitration is part of the same and it is its continuation—would be "taking a retrospective step in the well-deserved conquests of the working classes." Let us examine this idea since it constitutes the underlying thought which apparently is the leitmotif of the contentions raised herein by the Secretary. Believing that to decide upholding the supremacy, within the limits of the law, of course, of collective bargaining and its consequences, is a step backwards, implies, in our opinion, a superficial view of the problem and an improper concept of the function of arbitration in labor-management relations.

The relations between the working classes and the employer, insofar as said classes have conflicting interests (the determination of each class to obtain the most from its contribution), generate certain degree of tension. This tension may be sometimes meager and very serious at other times. Collective bargaining is a social and peaceful means to render said tension tolerable and to maintain the labor-management relations operating fruitfully. It is social because it is not individual. Experience has shown that the workers individually could not confront the economic force of the employer. But considering its vast number, within the democratic system, the workers constitute a great political force. When they acquired consciousness thereof, they were able to transform said political force into labor legislation. It is fair to point out that frequently they relied therefor, everywhere, on the leadership of persons from the upper classes, but having liberal ideas. Labor legislation guaranteed the right to unionize and negotiate collectively. But those rights, as it happens with every

right, are not attained by themselves. Somebody must assert, exercise, and defend them. That is the role of the labor movement and of the labor unions.

Without a labor movement sufficiently strong to invoke and exercise them, those rights would be barely effective. The existence of strong and active labor unions is already a reality in our medium. They can only be maintained like that if they are permitted to exercise their function.

■ The public policy in the United States as well as in Puerto Rico and in other countries favors collective bargaining and its mechanisms to settle internally their problems because that is the means to maintain a reasonably pacific and fruitful industrial peace and because that is the manner in which the labor movement and its unions are exercised and developed, which is considered desirable because it is useful and fair. See the following legislative expressions of Puerto Rico and of the United States.

Puerto Rico: Section 1 of our Labor Relations Act, 29 L.P.R.A. § 62, after stating that the public policy of the Government of Puerto Rico with respect to the employment relations consists in developing collective bargaining as one of the instruments for maximum production and toward a higher living standard, and after stating that the terms and conditions of employment are to be established by means of said collective bargaining, it states that the collective bargaining agreements are vested with public interest and that "[I]t is the policy of the Government to eliminate the causes of certain labor disputes, by developing the practices and proceedings of collective bargaining." As it is well known arbitration proceedings are part of said collective bargaining.

United States: The Congress of the United States has stated in the Labor Management Relations Act, 29 U.S.C. § 171(a) that:

"It is the policy of the United States that sound and stable industrial peace and the advancement of the general welfare,

health, and safety of the Nation and of the best interests of employers and employees can most satisfactorily be secured by the settlement of issues between employers and employees through the processes of conference and collective bargaining between employers and the representatives of their employees."

The Congress has also stated that:

"Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement."—29 U.S.C. § 173(d).

Said legislative public policy of our Legislature and of the Congress of the United States has received ample support in the judicial decisions of the supreme courts of both countries. Thus for example, referring to the congressional expressions aforecited the Supreme Court of the United States stated that "That policy can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play." *United Steelworkers of America* v. *American Manufacturing Co.*, 363 U.S. 564, 566 (1960). See also, *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *Textile Workers Union of America* v. *Lincoln Mills of Alabama*, 353 U.S. 448 (1957); *Republic Steel Corp.* v. *Maddox,* 379 U.S. 650 (1965); *Labor Relations Board* v. *New York & P.R. S/S Co.*, 69 P.R.R. 730 (1949); *Labor Relations Board* v. *I.L.A.*, 73 P.R.R. 568 (1952); *Encarnación* v. *Jordán*, 78 P.R.R. 481 (1955); *Rivera* v. *Land Authority*, 83 P.R.R. 251 (1961); *Pérez* v. *Water Resources Authority*, 87 P.R.R. 110 (1963); *Martínez* v. *Commonwealth Oil Refining Co.*, 92 P.R.R. 673 (1965).

There is much good (industrial peace, encouragement of the labor movement, education in the democratic and pacific procedures to settle controversies) and nothing wrong in permitting, as the courts have done, within the ample limits of the law and of the Constitution, the free and lawful play of the

procedures agreed upon by the parties in the collective bargaining agreements. Doing so is, if the phrase may be used, "liberal."[2] The opposite is what the Secretary contemplates in this case. Excessive paternalism, precluding the functioning of the procedures agreed upon by the parties, instead of being beneficial to the workers prejudices them since it prevents the development of the labor movement and of its indispensable instruments: the unions and collective bargaining.

In other words, if the workers are encouraged to depend on the government for things which can and should be done by the labor unions, a meager service is being offered to them since their best instruments for struggle and protection are weakened. Those instruments, the labor unions and collective bargaining, represent, in last instance, the guarantee that their rights shall always be defended, because if a government were not willing to legislate as to wages or to prosecute their cases the workers would be destitute of defense except for the well-organized and administered labor organizations to defend their rights by collective bargaining and in the administrative and judicial courts. Precluding them from acting by themselves, by excessive paternalism, would atrophy their means of defense, as a muscle not used is atrophied.

The conquests concerning wages and working hours, or any others, already enacted are not in danger by permitting labor organizations and collective bargaining to function in a lawful manner. Said conquests shall remain in full force and effect since, as we have pointed out before, they constitute a part of the public policy and cannot be violated by either the agreements or the awards. To propitiate the development and growth of the labor movement and the industrial peace, the parties must be permitted to determine, by collective bargain-

---

[2] We use the phrase by the leave of the exacting intellectual readers to whom the use of terms, labels or nicknames instead of the rational analysis of the social problems is repugnant, as it is to us.

ing, the manner in which they wish to settle their controversies.

It is universally acknowledged that arbitration is more desirable for the settlement of labor-management disputes than litigation. Arbitration is more speedy, less expensive, less technical, and more appropriate to settle industrial disputes than litigation. Instead of litigating expensively for several years, arbitration produces fair and economic solutions in one or several weeks. Let us take the case at bar as an example. In this case the complaint was filed in the Superior Court on December 21, 1966. The order object of this appeal is of March 13, 1969. The judgment of this Court is dated March 17, 1970. The issue has been in litigation for over three years and nothing has been decided as to the merits thereof. After this petition for certiorari is decided, it is that the court will start to consider the merits. The part of the claim which must be submitted to arbitration may be settled in several weeks, but who knows when the part under judicial litigation shall be definitively decided. If the case had been submitted to arbitration when the complaint was filed in December 1966, it could have been decided on the merits by the beginning of the year 1967.

It may also be added that the labor-management relations in the country cannot be subject to such an unfair and partial ruling as the one the Secretary wants us to adopt. It would be in the sense that while one of the contracting parties is bound by the collective bargaining agreement to submit to arbitration, the other party may, through the intervention of the lawyers of the Labor Department, evade its contractual obligation of submitting to arbitration. The idea in itself is contrary to the most fundamental concepts of justice. In ruling on a matter which has been developing to such a great extent through court decisions, our case law must be underlied by a consistent and systematic thought.

Returning for a moment to the errors assigned, we want to indicate that splitting a case per se does not constitute an error. It all depends on the circumstances of each case in particular. In this case it was necessary to do it. The trial court did not commit the second and third errors either, because its three orders mentioned at the beginning of this opinion show that actually said court considered the public policy involved in the legislation and in the case law on this matter. We do not alter in any way our decision in *Sierra, Sec. of Labor* v. *Superior Court*, 81 P.R.R. 540 (1959). There, in a suit brought by the Secretary of Labor in representation of several workers, the employer submitted an extensive and detailed interrogatory to each one of them. On this particular we decided that "as to the procedural steps" the adverse party was the Secretary and that he was the one who had to answer the interrogatories. It must be clearly stated that in a controversy of this nature, which is being heard in a court of justice and where sometimes the Secretary represents a considerable number of workers, considerations of order and of economy in the proceedings indicate that the Secretary, as representative of the workers, should be the one to answer the interrogatories.

The fourth error lacks merit also. As we have seen, submitting to arbitration is not a danger to be evaded, but rather a good labor-management practice which must be encouraged.

For the reasons aforestated the order of the Superior Court, San Juan Part, rendered in this case on March 13, 1969, will be affirmed and the writ issued will be quashed.

Mr. Chief Justice Negrón Fernández, Mr. Justice Santana Becerra, and Mr. Justice Blanco Lugo did not participate herein.